Smith v. Kearney.

---

## SMITH, adm'r, &c. vs. KEARNEY.

Where a legatee or distributee of an estate owes a debt to the testator, so much of such debt as can be collected by the executor, including the interest due at the testator's death, is to be considered and treated as a part of the capital of the estate; and must be apportioned and distributed accordingly.

If the whole amount of such debt, and interest, can be collected or received, by the retainer of the income, by the administrator, the interest which has accrued upon the amount which was due at the death of the testator is properly distributable among those who have present interests in the personal estate of the testator; and the sum due at the death of the testator is to be considered and treated as a part of the capital of his personal estate.

But, in such a case, it would be inequitable in reference to the rights of persons to whom the testator has bequeathed life interests in his estate, for the administrator to invest as capital, for the benefit of the remaindermen, from the time it was retained, the whole amount received and retained on account of the debt due to the estate, during the life of the debtor. On the contrary, a proportionate part of the receipts, subsequent to the death of the testator, where the whole debt, with the interest which has accrued thereon after his death, cannot be collected, should be considered as interest accrued and received upon the capital of the estate; and should be paid over to those who are entitled to life interests in such capital.

And the proper way to apportion partial payments between the persons entitled to the life interests, and the remaindermen, in such a case, is to consider as capital, so much of the amount, as with the legal interest thereon from the death of the testator, will produce the whole principal and interest collected and which is to be apportioned.

In distributing a fund received and retained, by the executor, on account of a debt due from a legatee or distributee, to the estate of the decedent, where the legatees and the widow, and the next of kin of the testator, had a vested interest in such debt from the time of his death, although the contingency upon the happening of which that interest was to vest in possession did not occur until some of them were dead, the executor must apportion the same, among the legatees, and widow

Smith *v.* Kearney.

and next of kin, and those who may be their representatives from time to time, in the same manner, or rather so as to produce the same effect, as if the fund had been received and retained by such executor immediately after the death of the testator.

The contingent right which a person has in the estate of another, arising from the chance that he may be entitled to a share in such estate, as one of the next of kin of the owner thereof, should he outlive him, is only a bare possibility, unaccompanied by any interest during the life of such owner; and it cannot be reached by a creditor's bill.

The right of an executor or administrator to retain the whole, or a part, of a legacy, or distributive share, in discharge or satisfaction of a debt due from the legatee or distributee to the estate, is not only consistent with the soundest principles of equity, but is perfectly well settled by the adjudications of the courts.

This right of retainer depends upon the principle that the legatee or distributee is not entitled to his legacy, or distributive share, while he retains in his own hands a part of the funds out of which that and other legacies or distributive shares ought to be paid, or which is necessary to extinguish other claims on those funds. And it is against conscience that he should receive any thing out of such funds without deducting therefrom the amount of the funds which is already in his hands, as a debtor to the estate. And the assignee of the legatee, or distributee, in such a case, takes the legacy or distributive share subject to the equity which existed against it in the hands of the assignor.

But this principle of equitable retainer does not apply to a fund arising from the sale of real estate which descended to the debtor as one of the heirs at law of the testator; and which real estate has been converted into personalty by accident, or because the valid portions of the will could not be carried into effect in any other way than by a sale of the land.

The proceeds of real estate, thus converted into personalty, are still to be considered as real estate, and as in no way connected with the funds which come to the hands of the executor for the purposes of the will.

Neither does the right of equitable retainer, on the part of the executor, extend to an interest in the proceeds of real estate which has not come to the debtor under the will of the testator, nor as one of his heirs at law; but which has been derived from another person, to whom such estate had previously descended as one of the heirs of the testator.

Where a power in trust, to an executor to sell the real estate of the testator, upon the death of the widow, for the benefit of legatees, is an imperative power, the estate is in equity to be considered as converted from the death of the widow; so as to give the legatees the same interest in the rents and profits, until the estate is actually sold, as they would have had in the interest of the proceeds of the sale if such sale had been made immediately upon the death of the widow.

THIS was an application, on the part of the complainant, under a reservation made in a decree in this cause, for directions as to the distribution of a portion of the fund in his hands, as

administrator with the will annexed, and as substituted trustee in the place of the executors of John Clendining, deceased.

The testator died in 1836, leaving a widow, and six children, John, James, Sarah the wife of William Hogan, Margaret the wife of H. W. Bulkley, Letitia the wife of Stuart Mollan, and Jane who subsequently married Edward Kearney, his only heirs at law. The provisions of the will of the testator are stated in the report of the decision of this court, upon the bill filed by the former administrator with the will annexed, for the construction and determination of the validity of certain provisions of the will, which were then in controversy. (*See De Peyster* v. *Clendining*, 8 *Paige's Rep.* 296.)

At the time of the death of the testator, in 1836, his son John Clendining, junior, was indebted to him in a very large sum, for a balance due to a former partner of the son, in relation to their partnership transactions; which balance had been assigned to the testator, by such former partner of the son. In October, 1838, the administrator, with the will annexed filed a bill, in this court, before the vice chancellor of the first circuit, for the recovery of the assigned debt thus due to the estate of the testator; and in April, 1839, the vice chancellor made a decree in that cause, against John Clendining, jun., for the payment of about $106,000, with interest and costs. An execution was afterwards issued upon that decree, for the collection of the amount thereof, but was returned by the sheriff entirely unsatisfied.

In April, 1837, Lord & Corbett obtained a judgment, in the supreme court, against John Clendining, junior, for about $43,000, for a debt due from him to them; upon which judgment an execution was issued and was returned wholly unsatisfied. And in May, 1838, as a collateral security for the payment of that judgment, Clendining assigned, to Lord & Corbett, all his right, claim and interest in the estate of his father, whether the will was or was not valid. Subsequent to this assignment, and previous to 1840, Letitia Mollan, one of the daughters of the testator, died without issue, leaving her husband surviving. And in November, 1840, F. De Peyster, the

then administrator, with the will annexed, of John Clendining deceased, and who had then been also appointed trustee, under the decree of this court, of June, 1840, made pursuant to the decision reported in the 8th volume of Paige's reports before referred to, filed a creditor's bill against John Clendining the younger; to which bill Lord & Corbett were also made parties defendants. That bill stated the making of the decree in favor of the then complainant, against John Clendining the younger, for the debt due to the testator, and the return of the execution upon that decree unsatisfied, the judgment of Lord & Corbett, and the assignment to them of the interest of their judgment debtor in his father's estate, as collateral security for the payment of that judgment. It also stated the death of the testator; the making of his will; the bequest of the income of the proceeds of one-seventh of the testator's real and personal estate, to John Clendining the younger; the filing of the bill by the administrator with the will annexed, for the settlement of the questions as to the construction and validity of the several provisions in the will which were in dispute between the widow and heirs; the making of the decree in this court in June, 1840; and the particular provisions of that decree, which were inserted therein, as directed in the reported decision of the chancellor. The complainant in such creditor's bill also claimed and insisted that the share or portion of John Clendining the younger in the estate of his father, as declared by the decree of the chancellor, was subject to the payment and satisfaction of the debt, due to the estate, as ascertained and settled and directed to be paid, by the decree of the vice chancellor; and that the complainant had an equitable right to retain the share of the proceeds and income, decreed by the chancellor to belong to John Clendining the younger, and apply them towards the satisfaction of the debt which the latter owed to the estate, whether the same belonged to him as devisee, or legatee, or as one of the heirs of the testator, or otherwise; and that neither he, nor Lord & Corbett as his assignees, had any right or claim to that share of the estate or any part thereof, until the debt due to the estate was fully satisfied. And the complainant, in addition to the usual prayer

ın a creditor's bill, prayed for such further or other relief in the premises as should be just.

John Clendining the younger suffered that bill to be taken as confessed against him; but Lord & Corbett appeared and answered, and the cause was heard upon pleadings and proofs as against them, before the assistant vice chancellor of the first circuit. In January, 1842, he made a decree directing the defendant, John Clendining, to pay the amount of the former decree with interest and costs; and in case of non-payment, that the complainant should be authorised to have, take and retain to himself, all and singular the portion which by the will of John Clendining the elder was given to his son John, and also all that portion of the personal estate of the testator which by the decree of the chancellor was decreed to the testator's son John, *as heir at law and distributee* of the personal estate, and also of all and every such portion thereof as might, by any of the contingencies mentioned in the chancellor's decree, belong to him *as such heir ;* to be applied to the payment of the debt and costs due to the complainant as administrator and representative of the estate. And prohibiting each and every of the defendants in that suit from instituting any proceedings against the complainant for retaining and applying such share or portion in that manner, until the debt and costs should be fully satisfied. The decree also provided for the payment of the surplus, if any, to Lord & Corbett, as the assignees of the interest of John Clendining the younger in his father's estate.

In May, 1843, Margaret Clendining, the widow of the testator, died; without having executed the power given her by the will, to dispose of the plate and household furniture among the children of the testator. And other questions having arisen in consequence of her death, and the death of Letitia Mollan, in relation to the sale of the farm, and as to the distribution of the household furniture and plate, and the right to the rents and profits of the farm, subsequent to the death of the widow and before an actual sale thereof could be made, a petition was presented to the chancellor, in the suit before him, pursuant to the reservation in his decree authorizing the same, for further in-

structions and directions in the premises. He thereupon decided that the reversionary interest in the testator's plate and household furniture was not undisposed of by the will, in the event which had happened; that the power to the widow, to make such disposition thereof as she pleased among the children of the testator, at her death, gave her a life estate therein, with a power of appointment, which was imperative under the provisions of the revised statutes relative to powers, (1 *R. S.* 734, § 96,) to appoint this portion of the testator's personal estate among his surviving children at her death; and that the trustee having died, leaving the power unexecuted, the court of chancery was bound to decree an execution of the power, in favor of all the surviving children of the testator equally; under the provisions of the 100th section of the article of the revised statutes relative to powers. He also decided that, as the power to the executors to sell the farm at the death of the widow was imperative, the persons beneficially interested in the execution thereof were entitled to the rents and profits of the farm, from the death of the widow until it was actually sold; and that in equity it must be considered as converted into personal estate from the time of the widow's death, although the legal title nominally passed by descent to the heirs at law of the testator, under the provisions of the revised statutes on that subject, until the actual execution of the power. The chancellor likewise held that the power in trust, to sell, extended to the whole of the testator's interest in the farm; and that the death of Letitia Mollan, without issue, did not render the power of sale as to her undivided two-sevenths of the farm void. But as the trust in relation to the proceeds of that part of the premises had failed, by her death without leaving issue, that portion of the proceeds of the sale, and two-sevenths of the rents and profits, subsequent to the death of the widow and before the actual conversion of the farm into personal estate, for the purposes of the will, was distributable immediately among all the heirs at law of the testator, or their representatives; as an interest in the real estate of the testator not legally and effectually disposed of by the will. A decretal order was accordingly made, for the dis-

Smith *v.* Kearney.

tribution of the plate and household furniture, or the proceeds thereof, and of the proceeds of the sale of the farm when received, and of the compensation for a part of the farm which had been taken, by the water commissioners, for the use of the Croton aqueduct. But that decretal order directed that the share of the proceeds belonging to John Clendining the younger should be taken, and retained by the administrator, and trustee, pursuant to the directions of the decree of the assistant vice chancellor of the first circuit in relation thereto ; and subject to the further order of the chancellor, if any question should arise as to the distribution of the part of the proceeds thus retained.

The administrator and trustee of the estate of the testator having resigned his trusts, and Floyd Smith having been substituted in his place in those trusts, and as the complainant in this suit, Lord & Corbett gave him notice that they claimed to be entitled to receive from him one-fifth of two-sevenths of the proceeds of the Sharon farm, being John Clendining the younger's share thereof ; and that their claim was founded upon their judgment against him, which they insisted was a prior lien upon the premises sold, and also upon their assignment of all his interest in his father's estate. The complainant thereupon presented this petition, asking the direction of the chancellor in the premises ; and he gave notice of the application, not only to the solicitor of Lord & Corbett, but also to the several parties claiming interests in the estate of the testator, under the will, or otherwise. Lord & Corbett appeared before the chancellor, by their solicitor and counsel, upon the application, and produced an affidavit stating the recovery of their judgment, and the return of the execution unsatisfied, and the assignment to them, and also showing that in October, 1840, they filed a creditor's bill against John Clendining the younger, before the vice chancellor of the first circuit, founded upon such judgment, and the return of their execution unsatisfied ; which suit was still pending. Under these proceedings Lord & Corbett claimed that they were entitled to one-sixth of two-sevenths of the proceeds of the farm, which would otherwise have belonged to John Clendining the younger, as one of the heirs at

law of his father; and to one-fifth of one other sixth of the same two-sevenths, which he would otherwise have been entitled to as one of the heirs at law of his deceased sister, Letitia Mollan. They claimed also that they were entitled to all the income of the estate, received by the administrator and trustee for the share of John Clendining the younger, after the assignment to them and before the making of the decree of the assistant vice chancellor; that such decree was merely prospective, and referred only to the future income; and that the former administrator and trustee, and the heirs at law of the testator, had recognized the rights of Lord & Corbett by consenting to the paying over to them of one-sixth of two-sevenths of the proceeds of the part of the farm taken by the water commissioners. Lord & Corbett were not parties to the suit before the chancellor; but they stipulated in writing to abide by the order or decree of the chancellor, to be made upon the petition, with liberty to appeal therefrom if they thought proper to do so.

*M. Hoffman,* for the complainant, and for the surviving legatees and devisees of the testator, and for the administrator of the widow.

*J. L. Mason,* for the administrator of Margaret Bulkley deceased, and for her children.

*E. H. Owen,* for Lord & Corbett, the assignees.

THE CHANCELLOR. The funds in the hands of the trustee, and those which are hereafter to be received by him, consist of the following items: *First,* the income of one-seventh of the proceeds of the residuary real and personal estate of the testator, which was devised and bequeathed to the executors in trust for John Clendining, jun. for life. *Second;* that portion of the two-sevenths of the personal estate of the decedent which was not legally and effectually disposed of by the will, upon the contingency which has actually occurred—the death of Letitia Mollan without leaving issue—which belonged to John Clen-

dining, jun. as one of the next of kin of his father; and a similar interest, which he will be entitled to, in the shares bequeathed to himself and other children of the testator for life with remainder to their issue respectively, in case he or any of such other children should die without leaving issue.  *Third;* the one-fifth of the proceeds of the plate and household furniture; to which John Clendening the younger became entitled, under he power in trust to his mother to dispose of it among her children at her death.  *Fourth;* that portion of the two-sevenths of the proceeds of the testator's real estate which was not legally and effectually disposed of by the will, in consequence of the death of Mrs. Mollan without leaving issue, and which belonged to John Clendining the younger as one of the heirs at law of his father; and a similar interest, to which he will be entitled as such heir, in the other five-sevenths of the proceeds of the real estate, or some part of those five-sevenths, in case he or any of the other children, to whom life interests were bequeathed, shall hereafter die without leaving issue. *And *Fifth;* his interest as one of the heirs at law of his sister, Mrs. Mollan, in her one-sixth of two-sevenths of the proceeds of the real estate which descended to her, as one of the six heirs at law of the testator, in the contingency of her leaving no issue to take the same under the provisions of the will; and a similar interest, as one of her heirs at law, in her one-sixth of the other five-sevenths of the proceeds of such real estate, or in her sixth of some of those five-sevenths, which may ultimately appear to have descended to her, at the death of her father, as one of his children and heirs, in case John Clendining the younger, or any of the other children of the testator, to whom life estates are given by the will, shall hereafter die without leaving issue.

As to the first item, the decree of the assistant vice chancellor expressly directs it to be retained and applied to the payment of the debt due, from the devisee and legatee, to the estate. I think his decree is equally plain in reference to the second item of which the fund is now composed, or may hereafter be composed.  And I do not understand the decree as making any distinction between income which had then come to the hands

of the administrator and trustee, and that which should thereafter come to his hands.   The whole amount of funds embraced in those two items, whether now in the hands of the complainant or hereafter to be received by him, must be applied in part satisfaction of the debt and costs due from John Clendining the younger to the estate of the testator ; and Lord & Corbett are not entitled to any part thereof until that debt, and the costs, with the interest on the debt from the 17th of April, 1839, as mentioned in the decree of the assistant vice chancellor, are fully paid.   (See Ex parte Turpin, Mont. Bank. Rep. 443.)

The only difficulty I have in relation to this part of the fund in controversy, is in properly apportioning it among those who are entitled to it under the will of the testator, or as his heirs at law and next of kin.   And this difficulty would be still greater if there was a probability that, in any contingency, the retained fund would be sufficient to pay the whole debt due to the estate, with the interest thereon.   Those who have present interests in the estate of the testator appear to have supposed that the whole retained fund was to be treated as income, and was to be distributed accordingly; and that John Clendining was to be laid entirely out of the case in making such distribution. As there is no probability, and perhaps I may say there is no possibility, that the share which the complainant will be entitled to retain under the decree of the assistant vice chancellor, or otherwise, will be sufficient to pay the debt which John Clendining the younger owes to the estate, he may be considered as out of the question so far as relates to his own interest.   But his issue, if he should leave any at the time of his death, and the issue of James Clendining, Mrs. Hogan, and Mrs. Kearney, are interested in the distribution of the fund.   And their rights as remaindermen, in five-sevenths of that portion of the fund which is to be deemed a part of the capital of the testator's estate, must be considered and provided for in the order of distribution.

So much of the debt of John Clendining, to his father, including the interest due at the time of the death of the latter, as can be collected by the administrator, must be considered and

treated as a part of the capital of the testator's estate, and must be apportioned and distributed accordingly. If the whole amount of the debt and interest could be received, by such retainer of income, so much as had accrued for interest, since the death of the testator, would be properly distributable among those who had present interests in the personal estate ; and the sum due at the death of the testator would all be considered and treated as a part-of the capital of his personal estate. (*Melland* v. *Gray*, 2 *Coll. Ch. Rep.* 296.) But it would be inequitable, in reference to the rights of the testator's children, to whom he bequeathed life interests in his estate, to invest as capital, from the time it was retained, the whole amount which has been or may hereafter be received and retained on account of this very large debt, during the life of the debtor, for the benefit of the remaindermen. On the contrary, a proportionate part of the receipts, subsequent to the death of the testator, where the whole debt, with the interest which has accrued thereon after his death, cannot be collected, should be considered as interest accrued and received upon the capital of the estate ; and should be paid over to those who are entitled to life interests in such capital. And the proper way to apportion partial payments, between the persons entitled to the life interests and the remaindermen, in such a case, is to consider as capital so much of the amount as will, with the legal interest thereon from the death of the testator, produce the whole sums collected and which are to be apportioned. Thus ; if there is due to the estate, at the death of the testator, a debt of ten thousand dollars, and only $1350 of that debt is collected, at the expiration of five years from his death, the executor should invest $1000 of the amount collected as the capital of the estate, and pay over, to the owner of the life estate in the fund, the other $350, as the interest on that capital for the five years ; and shou.d thereafter pay over to the owner of the life estate the subsequent income of the $1000, so invested as capital.

In the case under consideration, the fund which is properly applicable to the payment of the debt of John Clendining the younger, must be apportioned accordingly, between the owners

of life estates, as income, and the shares of the remaindermen which are to be invested as capital; and the future income of such capital must be paid to those who are entitled to life estates therein. But inasmuch as the debtor himself will, in this apportionment, have a part of the past income assigned to him, as the owner of a life estate in one-seventh of the testator's personal property, that, as well as the future income of the capital of the portion of this fund which is to be set apart for his issue in case he shall leave any at his death, must again be retained by the complainant, on account of the debt, to be further apportioned ; and so on until his interest therein is exhausted. The shares apportioned to the other owners of life estates, as income in the fund retained by the complainant and his predecessor, under the decree of the assistant vice chancellor, must be paid to them by the complainant according to the conditions of the will. And the capital belonging to the shares of James Clendining, Mrs. Hogan, and Mrs. Kearney, must be invested, and the income thereof paid to them for life.

The other two-sevenths which is apportioned between Stewart Mollan, as the representative of his deceased wife's interest for life therein, and the widow and next of kin of the testator, must be apportioned upon the same principle ; but it must be made with reference to the time of Mrs. Mollan's death, so as to give her husband the income of the whole two-sevenths up to that time. And the capital of that two-sevenths, and the subsequent accumulations thereon, together with John Clendining's distributive share in two-thirds of such two-sevenths and the accumulations, must be apportioned and distributed and paid over as follows : one-third to the administrator of the testator's widow, as an interest in the personal estate of her deceased husband not disposed of by the will; one-fifth of two-thirds to Stewart Mollan, as the representative of his deceased wife ; one fifth to the administrator of Mrs. Bulkley ; and one-fifth to each of the other three surviving children of the testator, James Clendining, Mrs. Hogan, and Mrs. Kearney. In other words ; in making the distribution, every thing that is retained towards John Clendining the younger's debt must, in

such distribution, be distributed among the legatees and the widow and next of kin of the testator, and those who may be their representatives from time to time, except John, in the same manner; or rather so as to produce the same effect, as if the fund had been received and retained by the administrator with the will annexed, immediately after the death of the testator. For the legatees and widow and next of kin had a vested interest in the debt at that time; although the contingency, upon the happening of which that interest was to vest in possession, did not occur until some of them were dead. The costs of the complainant, upon this application, and all the costs and expenses which may hereafter be incurred by him in procuring an apportionment of the fund, or in any future litigation in reference thereto, and which are properly chargeable against the estate generally, must be charged upon the personal property of the testator not validly and effectually disposed of by the will, which arises from the share of John Clendining the younger in the estate; and which is retained by the administrator and trustee for his debt. And such costs and expenses must first be deducted, before distribution is made between the widow and next of kin of the testator, or their representatives. If any other sums have heretofore been properly retained by the administrator and trustee, or shall hereafter be so retained by him, on account of this debt of John Clendining the younger, out of his share of his father's estate, or otherwise, they are to be apportioned, invested, and distributed in the same manner, or upon the same principles as above stated in reference to the sums which have already been retained, under and in conformity to the decree of the assistant vice chancellor; after deducting the costs and necessary expenses from that part of the debt, to the estate, which is not legally and effectually disposed of by the will.

The interest of John Clendining the younger, in his mother's third of the personal property of the testator which is not disposed of by the will, does not belong to the complainant under the decree of the assistant vice chancellor; nor is he authorized to retain that share of the fund; as there are no mutual claims;

between him and the debtor of the estate which he represents, in relation to the widow's distributive share. That share belongs to the personal representative of the widcw ; and John Clendining, the younger, has no right to bring a suit against the complainant, either at law or in equity, to recover his proportion of that share, to which he may be entitled as one of her next of kin. Neither are Lord & Corbett entitled to that interest, of their judgment debtor, in his mother's distributive share of his father's estate. It was not embraced in his assignment to them, nor did it in fact exist, either at that time or when they filed their creditor's bill against him, in October, 1840. For his mother was then living, and he had no interest in her estate, either vested or contingent. His chance of becoming thereafter entitled, as one of her next of kin, was a bare possibility unaccompanied by any interest. It could not therefore be reached by a creditor's bill at that time. And the only way it can now be obtained, either by these judgment creditors or by the complainant in this cause, except through a voluntary assignment thereof by John Clendining the younger, is to file a creditor's bill, to reach this interest in his mother's share of the debt due from him to his father's estate ; and which is being paid from time to time to the personal representative of the mother, out of his share of the last mentioned estate. I have therefore directed the whole of the widow's third of the fund in question to be paid over to her administrator ; who is the only person au thorized to receive the same and to give the complainant a proper discharge therefor. And it will be his duty to receive it and distribute it among those who are legally entitled thereto. Or if he wishes to avoid that trouble, he can give the complainant an order to pay over the same to those who are entitled to share in her estate according to their respective rights and interests therein.

The one-fifth of the proceeds of the plate and household furniture, to which John Clendining the younger was entitled, under the power of appointment contained in the will, as one of the five surviving children of the testator, the administratoɪ was entitled to retain ; not only by virtue of the decree of the

assistant vice chancellor, but also independent of that decree. The decree declares that the complainant is authorized to retain all and singular the portion which in and by the last will and testament of John Clendining, deceased, was given and bequeathed to John Clendining, one of the defendants in that suit. This part of the decree embraces what was given to the latter, by the will, under the power of appointment; whether that power was in fact executed, or the whole was distributed among all of the class beneficially interested in the fund to which the power in trust related, under the provisions of the statute, in consequence of the death of the trustee of the power without having executed the trust. In either case, it was a part of the fund given and bequeathed to the party entitled to it; and not a part of the testator's estate which was not validly and effectually disposed of by the will.

Again; the right of the executor or administrator to retain the whole, or a part, of a legacy or distributive share, in discharge or satisfaction of a debt due from the legatee or distributee to the estate, is not only consistent with the soundest principles of equity, but is perfectly well settled. Thus, in the case of *Jeff* v. *Wood*, (2 *P. Wms. Rep.* 128,) which came before Sir Joseph Jekyll in 1723, he decided that the executor was entitled to retain a legacy, as against the assignees in bankruptcy of the legatee, in satisfaction of a debt due from the legatee to the estate of the testator. In *Sims* v. *Doughty*, (5 *Ves.* 243,) Lord Alvanly allowed a retainer by the surviving executor, as against the representatives of a deceased executor who was a legatee, but who had wasted a part of the estate. In the case of *Lady Elibank* v. *Montelieu*, (*Idem*, 737,) the administrator was not allowed to retain a debt due to the intestate, from the husband of one of the next of kin. But that decision was put upon the ground that the debtor of the testator and the person entitled to the distributive share of the estate were not the same, and that the wife's equity in her distributive share must first be protected. Even in that case, however, the reference to the master was made upon the principle that the administrator was entitled to retain for so much of the distributive

Smith *v.* Kearney.

share as was, at law, due to the husband, after making a suit able provision for the wife and her children out of the same. The decree of Sir William Grant, in *Carr v. Taylor*, (10 *Ves. Rep.* 574,) was made upon the same principle; and the assignees of the husband were required to make a proposal for an ade-. quate allowance out of the wife's distributive share to satisfy her equity. And in the *Matter of Gordon*, (1 *Glyn & Jam. Rep.* 347,) Sir John Leach decided that the executor was entitled to re. tain, as against the assignees of the husband, the interest of the husband in a legacy to his wife, in satisfaction of a debt due to the testator ; after providing for the wife's equity. In *Rankin* v. *Barnard*, (5 *Mad. Rep.* 32,) that same distinguished equity judge, decided in favor of the right of the executors to retain for a debt due from the husband of the legatee, as against the assignees in bankruptcy of the husband ; the wife being dead. He says, " A legacy to the wife is at law a legacy to the husband, but in equity it is subject to a claim of the wife to a provision out of it for herself and children. This lady has died without asserting such a claim ; and the legacy being discharged of her equity would have become the absolute property of the husband if there had been no bankruptcy. It is clear that as against the husband, the executors of the testatrix would have had a right to satisfy the legacy by writing off so much of the debt due from the husband to the estate of the testatrix ; and they must have the same right against the assignees of the husband." That this is not a mere question of legal offset, but of equitable lien and right of retainer, was settled by Sir James Wigram in the recent case of *Courtenay* v. *Williams*, (3 *Hare's Ch. Rep.* 539.) If the share of John Clendining the younger in the proceeds of the plate and household furniture, has been retained by the administrator on account of the debt due to the estate, it must be apportioned and distributed among the legatees for life and the remaindermen, and the widow and next of kin of the testator, or their representatives, as above directed.'

The next question to be considered is, as to the right of the administrator and trustee to retain out of the fourth item of the fund in controversy, as above specified. The rights of the re

Smith *v.* Kearney.

spective claimants to this part of the fund in the hands of the complainant, are in no way affected by the decree of the assistant vice chancellor. For that decree neither authorizes the administrator and trustee to retain it, for the debt due to the estate, nor directs him to pay it to Lord & Corbett, as the assignees of John Clendining the younger's interest in ... Nor was there enough of the will set out in the bill, in that case, to raise any question as to this part of the fund. The rights of the parties must therefore be disposed of here, without reference to that decree; which decree I think was right as to all the questions which appear to have been disposed of by it.

In the cases which I have been considering, except in a few which were mere questions of legal or equitable set-off, the right to retain depended upon the principle that the legatee or distributee was not entitled to his legacy, or distributive share, while he retained in his own hands a part of the fund out of which that and other legacies, or distributive shares, ought to be paid, or which were necessary to extinguish other claims on that fund. In other words, the legatee or distributee, in such cases, seeks to obtain a portion of the fund which the testator, or the letters of administration, have placed in the hands of the executor or administrator to pay debts and legacies, or distributive shares ; while such legatee or distributee is himself a debtor to the estate, and by withholding payment, diminishes the fund to that extent. And it is against conscience that he should receive any thing out of the fund without deducting therefrom the amount of that fund which is already in his hands, as a debtor to the estate. The assignees of the legatee, or distributee, in such a case, take his legacy or distributive share subject to this equity, which existed against it in his hands. But in relation to the proceeds of that portion of the real estate which descended to John Clendining the younger, as one of the heirs at law of the father, this principle of equitable retainer does not apply. That fund was not placed in the hands of the executors, by the will of the testator, as personal estate, but its conversion was merely accidental; because the valid portions of the will of the testator could not be carried into effect in any

other way than by a sale of the whole farm. It is, in equity, therefore, still to be considered as real estate, and as in no way connected with the fund which came to the hands of the complainant for the purposes of the will; of which last mentioned fund the real estate equitably converted, and the whole personal estate, including the debt of John Clendining the younger, formed a part. Indeed the real estate which descended to the testator's son John, as one of the heirs at law, was not in fact converted at the time of the assignment thereof to Lord & Corbett, in May, 1838. The proceeds of the subsequent sale of this particular interest in the testator's real estate, therefore, did not come into the hands of the administrator and trustee, in trust for the debtor of the estate; but in trust for Lord & Corbett. Had it continued the property of the debtor of the estate until after the fund arising from the sale came into the hands of the executor and trustee by operation of law, for the benefit of such debtor, a question of equitable set-off, founded upon the insolvency of the latter, might have arisen; which it is not necessary now to discuss. Upon the ground that the fund was received for the benefit of Lord & Corbett as the cestuis que trust, they are entitled to have it paid over to them.

The remaining item of the fund in controversy arises from the sale of the interest of John Clendining the younger, in one-fifth of that part of the real estate of the testator which, in the event that has happened, and in those which may hereafter occur, descended to Mrs. Mollan, as one of the six heirs of her father who were in esse at the time of his death. That interest did not come to John Clendining under the will of his father, and the complainant, therefore, has no equitable lien on it, for the reasons before stated. Nor did it come to him as one of the heirs at law of his father, but descended to him as one of the five heirs at law of his sister, Mrs. Mollan; his mother's life interest therein having terminated by her death, before the sale. It would not, therefore, have passed to Lord & Corbett, by the terms of his assignment to them, even if it had descended to him before the date of that assignment; which it did not. But I think they have an equitable lien upon this part of the

Smith *v.* Kearney.

proceeds of the sale, by the docketing of their judgment, in 1837. Upon the death of Mrs. Mollan, which was before the sale, the legal title to this share of the real estate became vested in the judgment debtor; and the lien of the judgment attached upon that legal title. And as the real estate of the testator which was not validly and effectually disposed of by his will, is not considered, in equity, as converted by the subsequent sale under the trust power, I think John Clendining, as one of the heirs of his sister, had an interest in that real estate, which was a proper subject of sale on execution, upon the judgment of Lord & Corbett, if such sale had taken place before the legal title of the judgment debtor had been divested by the execution of the power in trust. (2 *R. S.* 359, § 3.) And if such a sale had taken place, the purchaser would have been substituted in the stead of the judgment debtor, as to his part of the proceeds of the subsequent sale under the trust power; which proceeds, in equity, would not be considered as converted into personal estate. If so, the divesting of the legal lien of the judgment, in this case. by the sale of the land under the power in trust contained in the will, only changed the legal lien of the judgment upon a portion of the land, to an equitable lien upon the same portion of the proceeds of that sale. Lord & Corbett are therefore entitled to that part of the fund in question.

An order must be entered with the clerk of the city and county of New-York, declaring the rights of the parties accordingly, and directing the complainant to distribute the fund which has already accrued, or which hereafter may accrue, in conformity therewith. If the parties cannot agree as to the proper apportionment and division of the fund, it must be settled by a master, to be named in the order, or by a referee to be hereafter designated by one of the justices of the supreme ccurt.