## Close *vs.* Van Husen.

H. M. died in 1837, possessed of a farm and personal estate. By his will, he gave the use of all his property, real and personal, to his wife for life; and he directed his executors, after her death, to sell all his real and personal property, and after paying his debts, funeral expenses, &c. to divide the remainder among his six children who were then living, and the children of two sons, H. and T. who were then deceased, equally; giving to each child one eighth, and the like proportion to the children of each deceased son; and he made C. and V. his executors. On the 12th of May, 1838, the executors, at a public auction of the personal property, sold a horse to J., one of the sons of the testator's deceased son, H., and J. gave a note therefor, payable in one year with interest. He at the same time promised V. (one of the executors) verbally, that if he did not pay the note he, V., might "retain the amount of the same out of his share or interest in the estate" of the testator. In Sept. 1838, J. gave to the plaintiff a mortgage upon his undivided share of the farm of which his grandfather died seised. The plaintiff was at the same time informed by the officer taking the acknowledgment of the mortgage, of the promise J. had made to V. J. died in 1839, and the widow of the testator died in June, 1846. In Sept. 1846, V., as surviving executor, sold the farm, and the share of J. in the avails thereof did not exceed the amount due upon the mortgage to the plaintiff. *Held* that the plaintiff was entitled to this share.

*Held also,* that the mortgage was a valid lien upon the interest of J., and had preference over the claim of the surviving executor, for the amount due upon the note.

An executor may retain, out of a legacy, the amount due from a legatee to the testator. And it seems this may also be done when the fund to be distributed to a debtor of the testator arises out of the sale of the real estate of the latter. But where the sale is not to take place until the termination of a life estate, and an heir and distributee, in the mean time, executes a mortgage of his interest in the property, that will have preference over the claim of the executor under a parol agreement made by the heir, that a debt due from the latter to the executor, for property of the estate sold to him, may be retained.

THIS was an appeal from a judgment entered upon the report of a referee. Hugh McMasters died in Sept. 1837, leaving six children, and the children of two sons, Hugh and Thomas, who were then dead, and possessed of a farm and personal estate. By his will he gave to his wife, absolutely, all the personal property which belonged to her when he married her ; also the use of all his real and personal estate, during life ; she paying taxes and rents upon a certain lease lot. He then added " and at her death, or as soon after as my executors shall deem

best for my heirs hereinafter named, to sell and dispose of all my real and personal estate, either at public or private sale, as they shall find most beneficial, or in their discretion they shall deem proper; and to give conveyances for the same in their names as executors, to the purchaser or purchasers, by virtue of this power, which I do make expressly for that purpose, and hereby ratify and confirm whatever they, my said executors, shall do in relation thereto. And I do further order, direct, will, devise and bequeath, that after the payment of all my just debts and funeral charges by my said executors, they purchase tombstones for myself and wife, and have them put up; they to pay for them out of the moneys arising out of the sale of the property real or personal, the first that may come into their hands as executors. They are to use their discretion as to the cost. And I do further order and direct my said executors, after the death of my wife, to sell my estate as above ordered, and to divide the same in eight equal divisions, and to be paid to their heirs and assigns by my said executors, in manner following, to wit: Unto my daughter Jane Spore, wife of Nicholas Spore, an equal eighth part; unto Isabel Clark, wife of James Clark, an equal eighth part; unto Eleanor Beverly, wife of Daniel Beverly one equal eighth part; unto Rebecca Beverly, wife of Nathaniel Beverly, an equal eighth part; unto Catharine McMasters an equal eighth part; unto Romia Van Husen, wife of Albert Van Husen, an equal eighth part; to the children of my son Thomas McMasters, deceased, one eighth part, to be equally divided between them; to the children of my son Hugh McMasters, deceased, one eighth part, to be equally divided between them." He further directed his executors to obtain a tombstone for his first wife, and pay for it out of the money arising from the sale of his property; and also for his two sons, deceased, to be paid for out of the shares of their children. And he further directed his executors as follows: "to sell my real and personal estate on credit or for cash, as they shall think best; and to pay out of the same, after paying all my just debts, within one month after any money comes into their hands, to divide the same as above directed, and to pay each one his or her proportion of the same,

Close *v.* Van Husen.

as above divided." And he made Van Husen, the defendant, and one Cady, his executors, to both of whom letters testamentary were issued. At the death of the testator, there were living five children of his deceased son Hugh, of whom James was one. On the 12th of May, 1838, James McMasters purchased a horse of Cady and Van Husen at an auction of the personal property of the testator, for $100.50, and gave them, as executors, a note therefor, payable in one year with interest; and, at the time, verbally agreed with the defendant, that if he did not pay the note, Van Husen might retain the amount of "his share or interest in the estate" of the testator. On the 18th of Sept. 1838, said James McMasters gave a bond to Close, the plaintiff, for the payment of $100 and interest, six months after date; and therewith, to secure the same, he and his wife gave to the plaintiff a mortgage of his undivided share and interest in the farm of which the testator died seised. At the time the plaintiff took this bond and mortgage, he was informed by the commissioner who took the acknowledgment, of the verbal agreement between Van Husen and James McMasters at the time the latter gave the note. James McMasters died in the winter of 1839; Cady, one of the executors, previous to 1846; the widow of the testator died in the month of June, 1846; and in Sept. 1846, the defendant, Van Husen, sold the farm belonging to the testator at his death; and the share of James McMasters of the avails thereof, did not exceed the amount due on the bond and mortgage he gave to the plaintiff; and the latter demanded of Van Husen, that he should apply whatever there was on said bond and mortgage, which Van Husen refused to do, but claimed to retain it in payment of the note James McMasters gave for the horse; and the plaintiff filed a bill to compel him to do so; making the children of James McMasters parties. The referee found for the plaintiff, to the amount of the share of James Mc-Masters in the proceeds of the sale of the land; on which judgment was entered, and the defendant, Van Husen, appealed.

*T. B. Mitchell*, for the defendant.

*P. Potter*, for the plaintiff.

*By the Court,* HAND, P. J. If it was not competent for the defendant to show the parol agreement made between him and James McMasters at the time the note was given, still I think the judgment must be affirmed. The mortgage given by James to the plaintiff was a transfer, *pro tanto,* of his interest in the real estate of his grandfather, subject to redemption; or rather, a valid lien thereon, subject to the execution of the power of sale by the executors; and entitling the plaintiff, in case of a sale, to a preference over any claim arising out of the verbal promise to one of the executors.

Transactions like that between James McMasters and Van Husen, should not be countenanced by the court. As executors, Cady and Van Husen could sell sufficient of the personal property to pay. the debts; for notwithstanding the provisions of the will, the creditors could not be compelled to wait until the death of the widow. Except for the purposes of paying funeral expenses and the debts, and defraying the expenses of administration, the widow was entitled to the use of all the property during her life; but the effect of this agreement, between James and Van Husen, was to take this piece of property from her, and allow one of the remaindermen to anticipate so much of the estate, upon paying interest, which would increase the fund for distribution at her expense. It was the duty of the executors to pay the debts, and bring that part of their trust to a close years before the sale of the real estate; and if there was a surplus of the personal estate, the use of it belonged to the widow. Beyond what was necessary to pay debts, &c., they had no authority to sell during her life; much less to take a lien upon the share of one of the distributees, when the proceeds of the land should come into their hands by the execution, at a future day, of a power in trust, to secure themselves against the consequences of an improper act.

James McMasters could make a valid mortgage of his interest. in the farm. (*In the matter of John and Cherry streets,* 19 *Wend.* 666. *Allen* v. *Dewitt,* 3 *Comst.* 276. *And see Fitzgerald* v. *Jervoise,* 5 *Madd. R.* 25; *Elwin* v. *Elwin,* 8 *Ves.* 547; *Leigh & Dalz. on Eq. Con.* 53, 91; 1 *R. S.* 729, § 56.)

Close v. Van Husen.

*Id.* 723, § 13.) Had there been no will, he would have been heir in that proportion ; and as such, would have taken an interest in the real estate in the same proportion ; and the executors or trustees took no interest in the land, and had only a mere naked power in trust to sell. And, indeed, where all the objects and purposes of the sale have ceased, as a general rule, the heir takes the estate unaffected by the power in trust. (*Leigh & Dalz. on Eq. Con.* 95, 100, 137, 142. *Smith* v. *Claxton,* 4 *Madd. R.* 484. *Bogert* v. *Hertell,* 4 *Hill,* 492.) And, again, in the present case, the devisees (as they were termed in *Smith* v. *Claxton,*) or distributees, notwithstanding the impression of personalty given to it in equity, if before sale the debts, &c., had all been paid, and no others had any interest therein, could have prevented the sale, and have taken the land as land, if they had all so agreed. (1 *Jarm. on Wills,* 533. 4 *Leigh & Dalz. on Eq. Con.* 88, *and ch.* 7. 2 *Stor. Eq. Jur.* §§ 793, 4.) Or, it seems, they might have made a valid agreement among themselves, by which one or more of them could have taken his or their share in lands. (*Smith* v. *Claxton.*) There was a sale in this case ; but there was no actual conversion, and could not be until after the death of the widow of the testator. (*Smith* v. *Kearney,* 2 *Barb. Ch.* 533. *Allen* v. *De Witt, Fitzgerold* v. *Jervoise, cited above.*) And the interest of James McMasters was of that nature that no lien or mortgage could be created by parol ; certainly not to give a preference over a mortgage duly executed and recorded during the life estate of the widow.

But it is contended, that James, at the time he gave this mortgage, was a debtor of the estate, and that such indebtedness should be considered as part of the assets, and his share subjected to a retention or deduction therefor. Where one, entitled to a portion of a fund in the hands of a trustee, is indebted to that fund, the equity of the trustee to impound the interest of a *cestui que* trust in the trust fund, is clear. (*Wigram, V. C. in Courtenay* v. *Williams,* 3 *Hare,* 554.) The right of the executors to retain for the debt due from the legatee to the testator is sustained by numerous cases. (*Cour-*

*tenay* v. *Williams, supra.* *Smith* v. *Kearney, supra.* *Campbell* v. *Graham,* 1 *Russ. & My.* 453. *Jeffs* v. *Wood,* 2 *P. Wms.* 128. *Ram on Assets,* 469.) And in *Jeffs* v. *Wood,* the principle was extended to include what the legatee had received of the executor, on the ground that it might be considered as payment. And in *Smith* v. *Kearney,* it was applied to a fund arising from the sale of real estate. But the debt was due to the testator. No doubt a direction for sale may stamp the fund with the quality of personalty. But, the difficulty of the defendant's case is, that before he had any valid lien upon the property, the plaintiff had acquired a prior one, which was not lost by the subsequent sale.

[Franklin General Term, September 4, 1854. *Hand, Cady, C. L. Allen* and *James,* Justices.]