CASE No. 1112.

WILSON v. KELLY.

1. A discharge in bankruptcy operates as a bar to an action on an antecedent debt, but does not extinguish it.
2. A son gave to his father a note for slaves purchased, and afterwards became a bankrupt and was discharged. The father died intestate after the emancipation. *Held*, that until the son accounted for this indebtedness, he was not entitled to receive any portion of his father's estate.

---

Before HUDSON, J., Kershaw, June, 1880.

This was an action for the settlement of the estate of Wiley Kelly, who died intestate in 1873, instituted by his daughter, Emily C. Wilson, against Jane K. Kelly, Geo. W. Kelly, J. F. Kelly, W. D. F. Kelly and other distributees of the intestate, and John R. Shaw, administrator, and others. Upon the single point brought by the appeal to this court the case is fully stated in the opinion.

*Mr. J. D. Kennedy*, for appellant.

*Mr. W. D. Trantham*, contra.

November 16th, 1881.   The opinion of the court was delivered by

McIVER, A. J.   Wiley Kelly died intestate in 1873, and this action was instituted by the plaintiff, as one of his heirs-at-law and distributees, against the administrator and the other heirs-at-law and distributees, for account and partition.   A note, under seal, executed by the appellant, W. D. F. Kelly, dated November 24th, 1858, and payable January 1st, 1860, to the intestate for $6,600, with sundry credits endorsed, was found among the papers of the intestate.   The proof was that this note was given to secure the payment of the purchase-money of seven slaves, bought by W. D. F. Kelly from his father, the intestate, Wiley Kelly.   On February 4th, 1868, W. D. F. Kelly filed his petition in the District Court of the United States, praying to be adjudged a bankrupt, and in March, 1871, he was duly discharged in bankruptcy.   This, he claimed, released him from the debt to the intestate, secured by the above-stated note, and that he is, therefore, now entitled to receive from his father's estate his full distributive share, without accounting for the balance due on the note.   The master reported otherwise, holding that W. D. F. Kelly still owed the note, though he was discharged from any liability to suit thereon, and that he must account for the balance due on the note before he could receive his distributive share of the estate.   To this report, exceptions were filed, which were overruled by the Circuit judge, who sustained the view taken by the master, and from his judgment this appeal has been taken.   Under the view which we take of this case we do not think that the question of advancement or the question of legal set-off, discussed with much ability in the argument here, can properly arise, and need not, therefore, be considered.

We think it quite clear that a discharge in bankruptcy operates, like a successful plea of the Statute of Limitations, not as a payment or extinguishment of the debt, but only as a bar to an action thereon.   Hence, where a debtor has been discharged in bankruptcy, while the *legal* obligation to pay the debt is gone, the *moral* obligation remains, because the debt is still unpaid, and it constitutes a sufficient consideration to sup-

port a promise to pay the debt, just as in the case of a debt barred by the Statute of Limitations; for, if the debt was paid, or otherwise extinguished, there could be no moral obligation to pay it which would serve as a consideration for a new promise. That these views are fully supported by authority may be seen by reference to the cases collected in *Bump Bankr. Pr.* 644, seventh edition.

The effect of these principles, when applied to this case, is that the appellant still owes the debt to his father's estate, although the right to enforce its payment by an action has been destroyed by the discharge in bankruptcy. This being the case, the result is that the debt thus due by the appellant constitutes a part of the assets of the estate which is now in the hands of the appellant; and, if this be so, then nothing would seem to be plainer or more strictly in accordance with equitable principles than that the appellant should account for these assets before he can be entitled to receive anything out of the other assets of the estate. The practical result is that the assets for distribution consist of the amount due by the appellant added to the other assets belonging to the estate, and he having already received the amount now in his hands, in the form of the debt due by him, cannot be allowed to receive anything more until the other distributees have received out of the other assets an amount equal to that which he has already received.

These views are fully supported by authority. In *Courtenay* v. *Williams*, 25 *Eng. Ch. R.*, 3 *Hare* 539, it was held that in a suit by a legatee to obtain payment of the legacy out of the assets of the testator, in a due course of administration, the executor might retain so much of the legacy as was sufficient to satisfy a debt due from the legatee to the testator, although the legal remedy for the recovery of such debt was, at the time of the death of the testator, barred by the Statute of Limitations. The remarks of Sir James Wigram, Vice Chancellor, in discussing this question, appear to be so appropriate to the case now under consideration that we cannot do better than to adopt his language. In speaking of a debt upon which the right of action has been lost or destroyed, leaving, however, the debt unpaid, he says that "it has been repeatedly decided, and is settled law,

that if a creditor, by means of a lien or other lawful means, can pay himself, without resorting to an action against the person of the debtor, he may lawfully do so." And, after reviewing the cases, he says this " is a suit to recover a legacy out of assets— that is, claiming a portion of the assets in the hands of the executor, and the claim is not made in any other way. The case is the same as if the assets were in the hands of the accountant-general. Now, to say that the right remains and the remedy only is barred, is, in a case like this, the same thing as saying that the legatee has already in his hands, to the amount of the debt, those assets of the testator which he seeks by his suit. Several ways of putting the case may be suggested in support of the argument on the part of the executors. They may say to the legatee, ' We admit your right to the legacy ; you have assets of the testator in your hands ; pay your legacy *pro tanto* out of those assets,' as in *Jeffs* v. *Wood,* 2 *P. Wms.* 128, and *Campbell* v. *Graham,* 1 *Russ. & M.* 453. Again, the executor might say : ' You ask for a portion of the assets of the testator, but you, yourself, are a debtor to the testator's estate, and his assets are diminished *pro tanto* by your default; it is against conscience that you should take anything out of the estate until you have made good what you owe to it;' and the equity of a trustee to impound the interest of a *cestui que trust* in the trust fund under such circumstances is clear [citing various cases]. To such a case, the rule that he who would have equity must do equity, would apply, by way of rebutter, to the plaintiff's demand."

This, as was held by Chancellor Walworth in *Smith* v. *Kearney,* 2 *Barb. Ch.* 533, is not a mere question of legal set-off, but of equitable right of retainer, which depends upon the principle that the legatee or distributee is not entitled to his legacy or distributive share while he retains in his own hands a part of the fund out of which that and other legacies or distributive shares ought to be paid. In other words, as that distinguished chancellor, in substance, said, the legatee or distributee in such a case seeks to obtain a portion of the fund which the testator or the letters of administration placed in the hand of the executor or administrator for the purpose of paying debts and legacies or

distributive shares, while such legatee or distributee by with-holding payment of the debt due by him diminishes the fund to that extent. It is, therefore, manifestly against conscience that he should receive anything out of the fund without deducting therefrom the portion of that fund already in his hands in the form of a debt due by him to the estate.

These principles apply as well to a case in which the debtor has been discharged in bankruptcy as to a case where the debt is barred by the Statute of Limitations, for, as we have seen, the effect in both cases is the same—merely to bar the right of action—leaving the debt unpaid, but without any legal remedy on the part of the creditor to enforce its payment. This seems to have been the view taken in *Jeffs* v. *Wood, supra,* and in several cases cited in 2 *Wms. Ex.* 936, to which cases, however, we have not been able to obtain access.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.