In the Matter of the Estate of NICHOLAS J. EWALD, Deceased.

Surrogate's Court, New York County, August 12, 1940.

940

*Margaret Mary J. Mangan,* for the administratrix.

*Morris L. Gussow,* for Robert Hoffman, as receiver of George F. Ewald, distributee.

*Benjamin Bernstein,* for Robert E. McFadden, a judgment creditor of George F. Ewald, distributee.

*William J. McArthur,* for the United States Fidelity and Guaranty Company, surety.

*Reisner & Shenk,* for Mae E. Walsh, claimant.

*Barnett Shapiro,* for Mary A. Betzag and Katherine Ewald Anderson.

*Kupfer & Levine,* for Peter Eckert, assignee of George F. Ewald.

*Martin S. Blate,* for Charles Sobelson, assignee of Charles Ewald.

Foley, S. In this contested accounting proceeding the issues are disposed of as follows:

(1) The main controversy revolves around the one-seventh distributive share of George F. Ewald, a brother of the intestate. The questions here presented for determination involve, *first,* the right of the administratrix to set off against this distributive share the amount of several loans made by the decedent to the distributee; *second,* the interest of one Peter Eckert under an instrument of assignment in which the distributee assigned to him all of the money, property or other interest in this estate which was due him or to become due him to the extent of $11,000; and, finally,

the rights and interest of the receiver of the property of the distributee, appointed in proceedings supplementary to execution on two judgments against him.

The decedent had on numerous occasions made loans to his brother George F. After the former's death on June 19, 1939, certain instruments evidencing indebtedness to him were discovered among his effects. The administratrix, after examination of the intestate's records, made demand upon George F. Ewald for repayment of sums which she believed to be due the estate from him by reason of these loans.

On July 29, 1939, George F. Ewald wrote a letter to the administratrix apparently in response to her oral demands upon him. He denied that the amount owing by him was as large as that claimed by her, and he disclaimed certain particular obligations charged against him. He expressly admitted, however, specific loans that were made to him by the deceased. One was in the sum of $3,000, as security for which the decedent had received a promissory note signed by George F. Ewald and his wife in which neither the amount nor the date was filled in. This note was stated by Ewald to have been executed in January, 1932. Another obligation was evidenced by a check in the sum of $500, representing a loan made January 15, 1932, and conceded by George F. Ewald to be his obligation. He further admitted that he had received other smaller loans in the form of checks amounting to not more than $100. He stated that all of these loans had been made to him and that he had intended to repay them, and he suggested that the administratrix deduct from his share the sum of $3,600 in payment of these debts.

The administratrix accepted the amounts thus stated to be due. She has listed them in her account as assets of the estate and has charged against the share of George F. Ewald the sum of $3,600 as suggested in his letter.

George F. Ewald was called as a witness in this proceeding, and he affirmed his obligations to the decedent in the amount which has been charged against his share. It is apparent from his testimony that he had borrowed from his brother even larger sums than those admitted by him, but he claimed that deduction of certain sums in payment of legal services performed by him for his brother reduced the indebtedness to the amount conceded due by him. He described the various loans, and he reiterated his intention and desire to repay them. The surrogate finds upon the evidence that George F. Ewald borrowed from the decedent, and has never repaid, the sums admitted in his letter of July 29, 1939, aggregating in amount $3,600.

The receiver of the property appointed under two judgments obtained against George F. Ewald has filed objections to the account, in which he attacks the inclusion of the $3,000 note and the $500 check as assets of the estate and the charging of those amounts against the distributive share of George F. Ewald. The basis of his objection is that both of those claims have been barred by the Statute of Limitations, and that they cannot be revived, particularly where the rights of creditors of the distributee intervene.

The note was concededly executed in January, 1932, and was payable on demand, since no time for payment was expressed. (Neg. Inst. Law, § 26.) The check for $500 was dated January 15, 1932. It was never presented for payment and was evidently regarded by the payee as merely security for the loan. The decedent died June 19, 1939, and there can be no doubt that at the time of his death his right of action against his brother on these two claims was barred by the Statute of Limitations. It is well settled, however, that the statute does not extinguish the debt but merely bars the remedy. The defense is one that must be pleaded by the debtor in order to be available and in the event of suit thereon a failure to plead the statute would result in making the obligations enforcible at law. It is possible also to revive the right of action on such debts by a written acknowledgment or by a promise contained in writing and signed by the party to be charged. (Civ. Prac. Act, § 59; *Manchester* v. *Braedner*, 107 N. Y. 346; *Connecticut Trust & S. D. Co.* v. *Wead*, 172 id. 497; *Lincoln-Alliance Bank & Trust Co.* v. *Fisher*, 247 App. Div. 465.) In order to constitute such an acknowledgment, " the writing must recognize an existing debt, and should contain nothing inconsistent with an intention on the part of the debtor to pay it. * * * The document need contain nothing more than ' a clear recognition of the claim as one presently existing.' " (*Lincoln-Alliance Bank & Trust Co.* v. *Fisher*, *supra*, p. 466.) In his letter to the administratrix, the debtor not only recognized his obligation in a specific amount but gave her express authority to liquidate the debt by applying a portion of his share to it.

The receiver contends that there was no clear and unqualified acknowledgment of an existing debt, but that there was at most an offer to compromise a demand barred by the statute. Without conceding that there is any force in this argument, it is a sufficient answer to point out that both the debtor and creditor interpret the letter as an acknowledgment of the debt, as well as authority to make the setoff, and that the liquidation of his debts by means of the charge against his distributive share as set forth in the account meets with the satisfaction of both debtor and creditor

alike. This is evident not only from the debtor's written acknowledgment, but from his testimony given from the witness stand.

In view of the permission thus granted by the debtor to retain a sufficient part of his distributive share to extinguish his indebtedness to the estate, it becomes necessary to determine whether the receiver appointed on behalf of the judgment creditors of the distributee has any basis in law for attacking that transaction. The rule appears firmly to be established that the creditors of a person have no standing to object to his failure to plead the Statute of Limitations against the stale claim of another against him, or to his waiving of the statute or revival of the claim. (*Allen* v. *Smith*, 129 U. S. 465; *Central Hanover Bank & Trust Co.* v. *United Traction Co.*, 95 F. [2d] 50; *Del Valle* v. *Hyland*, 76 Hun, 493; affd., 148 N. Y. 751; *McConnell* v. *Barber*, 86 Hun, 360, 362; *Livermore* v. *Northrup*, 44 N. Y. 107; *Matter of Sheppard*, 180 Penn. St. 57; 36 A. 422; *Brookville Nat. Bank* v. *Kimble*, 76 Ind. 195.) In *Central Hanover Bank & Trust Co.* v. *United Traction Co.* (*supra*) Judge SWAN said: " It has never been deemed a fraudulent conveyance to pay an honest debt or to perform an obligation which the obligor was under a moral duty to perform, although the debt or obligation was legally unenforceable because of some statutory provision." Judge LEARNED HAND, in concurring, said: " I agree that, as the law stands, we cannot hold that the revival by an insolvent of a debt barred by the statute of limitations is a fraudulent conveyance."

The decision of the Supreme Court of Pennsylvania, in *Matter of Sheppard* (*supra*) is particularly in point. There a judgment on confession was entered by the executrix against a distributee on a claim against which the Statute of Limitations had run. Attachment creditors of the distributee contended that, by reason of their prior attachment, they acquired a lien upon the share of their debtor in the estate which deprived him of the power to waive the statute. In the opinion of the lower court, which was approved by the Supreme Court, it was said: " The attachment binds only the interest of the debtor in the estate of the testator, and the interest does not arise until it has been ascertained how much of the estate has already been received by him. The lien does not extend to the conscience of the debtor. If, instead of obtaining the confession of judgment, the executrix had brought suit for recovery of the debt, nothing short of the pleading of the statute could have prevented an adverse judgment. It can scarcely be pretended that an attaching creditor of the defendant to the suit would have the right to intervene, and make defense."

In *Allen* v. *Smith* (129 U. S. 465) certain judgment creditors of one Todd brought a proceeding against his administrator and heirs in an effort to have set aside a certain judgment obtained against him by his son-in-law on the ground that it was collusively obtained and was in fraud of his creditors. The United States Supreme Court held that the plaintiffs had not sustained their burden of proving that the judgment was dishonestly obtained. In language particularly pertinent to the situation in the pending proceeding, the court said: " Much comment is made on the fact that Todd did not plead the statute of limitations of the State to a part of Smith's claim. But this is not an objection of which the plaintiffs can avail themselves. Todd was at liberty to waive the plea, and there was evidently sufficient in the relations of the parties and in the circumstances of the case to warrant him in doing so " (p. 470).

It is clear, therefore, that the receiver of the property of the distributee has no standing in law to object to the transaction between the distributee and the estate whereby the debts were revived and the bar of the statute lifted. That transaction was not fraudulent because the debts were *bona fide* obligations. The Statute of Limitations does not discharge a debt but merely bars the remedy thereon; and the waiver of the statute does not create a new obligation, but simply permits enforcement of the old promise. (*Central Hanover Bank & Trust Co.* v. *United Traction Co., supra; Hulbert* v. *Clark,* 128 N. Y. 295; *House* v. *Carr,* 185 id. 453.) The right of an executor or administrator to set off an enforcible debt owing to decedent by a legatee or distributee, against his legacy or distributive share, is firmly established. (*Smith* v. *Kearney,* 2 Barb. Ch. 533, 547; *Close* v. *Van Husen,* 19 Barb. 505, 509; *Ferris* v. *Burrows,* 34 Hun, 104; affd., 99 N. Y. 616; *Matter of James,* 149 Misc. 135, 136; *Matter of Flint,* 120 id. 230; affd., 206 App. Div. 778; *Matter of Grifenhagen,* 174 Misc. 559; *Matter of Macneal,* Id. 947.)

The surrogate, therefore, holds that the setoff of the debts against the distributive share of George F. Ewald must be allowed.

There remains for consideration the relative rights of the assignee and the receiver to the balance of the distributive share that is left over and above the amount set off by the administratrix. The assignment by George F. Ewald to Peter Eckert of all his property and interest in this estate to the extent of $11,000 was executed on June 27, 1939, and was recorded in the office of the clerk of this court on June 30, 1939. This assignment was made for the purpose of reimbursing the assignee for loans made to the distributee, who was his son-in-law.

The property of George F. Ewald did not vest in the receiver until after the recording of the above assignment. The property of a judgment debtor, whether acquired before or after the appointment of a receiver, is vested in the receiver from the time of filing the order appointing him, or extending his receivership, as the case may be. (Civ. Prac. Act, § 807.) Where the receiver's title has become vested, it may extend back by relation, for the benefit of the judgment creditor, to the time of the service of the order or subpœna upon the judgment debtor in supplementary proceedings, or to the time of the service of a third-party order. (Civ. Prac. Act, § 808.) In the latter case the receiver's title extends to the personal property of the judgment debtor which was in the hands or under the control of the person thus required to attend and be examined at the time of the service of the order or subpœna. Tested by these rules, the receiver's title vested on February 27, 1940, the date of the filing of the order appointing him under the Herold judgment. The order extending the receivership to include the McFadden judgment was filed April 18, 1940. The earliest that the title of the receiver can be made to extend back is August 1, 1939, when the administratrix was served with a subpœna for examination as a third party in proccedings supplementary to the execution of the McFadden judgment. No order or subpœna for his examination was ever served upon the judgment debtor personally. He voluntarily appeared and submitted to examination.

It thus becomes evident that at the earliest date on which title can be said to have vested in the receiver, even under the theory of relation back, the judgment debtor had no interest in this estate. The assignment, which had been theretofore duly recorded, disposed of his interest to the extent of $11,000, an amount greatly in excess of any possible interest he might have had. The title had, therefore, passed to the assignee before any title had vested in the receiver. The receiver can take priority over the assignee only if he can impeach the assignment as a fraudulent conveyance.

That George F. Ewald was insolvent at the time he made this assignment cannot be doubted. It is clear, too, that the assignment was made for the purpose of preferring the assignee over other creditors of the assignor. This, however, is not decisive of the question. " That a debtor has the right to pay the claim of one creditor in preference to and to the exclusion of all the others, has been many times decided." (*Del Valle* v. *Hyland*, 76 Hun, 493; affd., 148 N. Y. 751.) The important consideration is whether it was made to defraud the other creditors. Every conveyance made by an insolvent person is fraudulent as to creditors without regard to his actual intent if the conveyance is made without a fair con-

sideration. (Debtor and Creditor Law, § 273.) " Fair consideration is given for property, or obligation, (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, * * * an antecedent debt is satisfied, or (b) when such property, or obligation, is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained." (Debtor and Creditor Law, § 272.)

Prior to the assignment to Peter Eckert, the distributee, George F. Ewald, was indebted to him in the sum of approximately $11,000. He had borrowed large sums from Mr. Eckert, who was his father-in-law, and had never repaid them. The total indebtedness was far greater than any sum the distributee might receive from the estate. The assignment was, therefore, based upon a fair consideration, and was not fraudulent as to other creditors. The assignee is entitled to receive any money due on account of the distributive share over and above that necessary to effect the setoff of the estate.

(2) The written agreement of settlement of the debt of Charles Ewald, one of the distributees, is approved and an appropriate provision may be included in the decree to that effect.

(3) The claim of Mae E. Walsh is disallowed upon the merits.

(4) The objections to the account filed by Robert Hoffman, receiver of the property of George F. Ewald, are disposed of as follows: Objections 1, 2, 3, 4 (a), 4 (b) and subdivisions a, b and c of objection 6 are overruled. Objection 5 and subdivisions d and e of objection 6 have been withdrawn.

(5) Schedule A of the account sets forth the total sum of $3,590 as due from George F. Ewald. The total should read $3,600. The corresponding amount of $3,590 deducted in Schedule B-1 as uncollectible debts must be eliminated from the account and from the summary statement in the decree.

In other words, by the foregoing disposition as to the indebtedness of George F. Ewald, gross assets must be increased by the sum of $3,600. The shares of the various distributees must be computed upon the net estate after the proper deductions are made from the gross estate.

Submit decree on notice settling the account accordingly.