In the Matter of the Estate of EDITH GOULD MACNEAL, Deceased.

Surrogate's Court, New York County, July 25, 1940.

*Robert B. Knowles* [*Chauncey F. Kingsley* of counsel], for the petitioners.

*Dean, King, Smith & Taylor*, for Carroll L. Wainwright, respondent.

*Larkin, Rathbone & Perry*, for the Central Hanover Bank and Trust Company, assignee, respondent.

*Strauss, Reich & Boyer*, for Henri Bendel, Inc., contestant.

*Jacob Ziff* [*Herman S. Axelrod* and *Maitland M. Axelrod* of counsel], for John M. McKinney, creditor.

*Flynt & Sully*, for the Greenwich Trust Company, creditor.

*Gallert, Hilborn & Raphael* [*Albert A. Raphael* of counsel], for Paterno Bros., creditor.

*George C. Bluestone*, for Harrod's Ltd. and Joce & Co.

*Epstein & Brothers*, for The Union Bank of Scotland, Ltd.

*Richard L. Deely*, special guardian.

FOLEY, S. In my prior decision in this contested accounting proceeding, certain matters were left open for future determination. (*Matter of Macneal*, N. Y. L. J. June 28, 1940, p. 2920.) In accordance with my directions in that decision, the parties have submitted briefs on the construction of the will and the right of the executors to set off the amount of the indebtedness due to the estate from Sir Hector Macneal against any money payable to him from the estate. In this phase of the proceeding, the dispute is between the executors, on the one hand, who assert on behalf of the estate claims by way of setoff which are far in excess of any moneys due him from the estate, and certain judgment creditors of Sir Hector Macneal, on the other hand, who have obtained third-party orders in proceedings supplementary to execution and the appointment of a receiver. They seek to take all moneys due him. Sir Hector Macneal has not appeared in this proceeding.

His financial interest in this estate consists of a legacy of $5,000 and certain property set apart for the benefit of the surviving spouse under section 200 of the Surrogate's Court Act. By arrangement between the executors and Sir Hector, this exempt property has been sold, and the proceeds, amounting to $1,450, are held subject to the decree of the surrogate. Against these sums due him, the executors assert their right to set off a judgment obtained by the decedent against him on November 5, 1936, and a further claim of the decedent against him for reimbursement for payments which she had become obligated to make as an accommodation acceptor of his bills of exchange. The judgment, together with interest to the date of her death, amounts to $33,460.68, and the claim not reduced to judgment is in the sum of $4,221.36. The judgment creditors of Sir Hector Macneal, whose claims are here asserted, are the Union Bank of Scotland, Limited, whose judgment amounts to $81,175.68, and the Central Hanover Bank and Trust Company, as assignee of a judgment in the sum of $110,004.84.

It thus becomes apparent, even if the judgment creditors were successful, the material consolation will not be very substantial.

Lady Macneal (formerly Edith Gould Wainwright), the testatrix, died in 1937 leaving a will dated May 16, 1935. In the sixth clause of her will, in which was included the legacy of $5,000 to her husband, she expressed her motive for such a bequest in these words: " I make no further provision for my said husband, for the reason that I have heretofore given to him considerable sums of money." It is the contention of the judgment creditors that by this language the testatrix forgave all indebtedness owing by Sir Hector to her, and that, therefore, the estate has no claims to set off against this legacy. There is no merit in this contention.

Whether or not a provision in a will amounts to a cancellation of the indebtedness owing to the testatrix depends upon the intention in the use of the language employed by her. (*Ritch* v. *Hawxhurst*, 114 N. Y. 512, 515.) Lady Macneal used the significant word " given," expressing the idea of a consummated gift. While there is no evidence in the record as to the amounts given by her to him, we are at liberty to assume from her own expression that such gifts were made. Indeed, a contrary assumption would be unwarranted in view of the entire evidence in this proceeding. A very persuasive fact which completely destroys any inference of an intention to cancel the debts is that more than a year after the execution of this will she commenced the action against her husband which terminated in the judgment above mentioned. In addition, she later instituted another action against him based upon the payments which she had been compelled to make on his bills of exchange, although it never came to judgment. In determining whether it was the intention of the testatrix by this language to forgive any and all indebtedness of her husband to her, these acts, which amount to a practical construction of the language, are of compelling weight. Moreover, the correspondence between the husband and wife in the year 1936 clearly shows the intention on her part to enforce the obligations and the expectation on his part to pay something on them.

The judgment creditors rely upon the decision in *Smith* v. *Ijams* (70 Hun, 155; affd., 141 N. Y. 552) as authority that such language is sufficient to establish a cancellation of the debts. I hold that it is not controlling here. The question is always one of intent. In that case the evidence showed that the decedent had never given anything to the plaintiff except the advances in question, so that the court was forced to conclude that the provision in that will " was either a declaration that she had given the plaintiff these advances or it was a piece of solemn mockery." (70 Hun, 155, 159.)

The evidence in the present proceeding clearly evinces a different intention. " While rules of construction may aid somewhat the way to a conclusion, they are not to be used to frustrate the intention of the testator, but when that is ascertained the language and mode of expression, if of doubtful import, may be subordinated to such intention." (*Ritch* v. *Hawxhurst, supra,* p. 515.) Moreover, the simple contract claim against Sir Hector was for reimbursement for payments made subsequent to the execution of the will. Under no circumstances could the words " heretofore given " be made to refer to moneys thereafter advanced. (*Rogers* v. *Rogers,* 153 N. Y. 343, 348.) The intention of the testatrix here to avoid the remission of debts due her is clear.

The right of the executors to offset obligations of the legatee due the estate against the amount of his legacy has been recognized and applied in this State from the earliest times. (*Smith* v. *Kearney,* 2 Barb. Ch. 533, 547; *Close* v. *Van Husen,* 19 Barb. 505, 509; *Wright* v. *Austin,* 56 id. 13; *Ferris* v. *Burrows,* 34 Hun, 104; affd., 99 N. Y. 616; *Matter of James,* 149 Misc. 135, 136; *Matter of Flint,* 120 id. 230; affd., 206 App. Div. 778; *Matter of Grifenhagen,* 174 Misc. 559.) The executors are, therefore, directed to apply the $5,000 legacy in partial satisfaction of the debts of the legatee to the decedent.

A further question is presented as to whether the pecuniary exemption and the proceeds of sale of admitted exempt property allocable to the husband under section 200 of the Surrogate's Court Act may be set off by the executors against the debts due the estate by the husband. I hold that no such setoff is authorized in law. The moneys and property under the section vest at death immediately in the surviving spouse. The pecuniary amounts and the articles enumerated in the section by its terms " shall not be deemed assets " of the estate. They cannot be subjected to the payment of the debts of the decedent. Prior to the amendment made by the Legislature to the section in 1932, even the funeral expenses or the deficiency in the amount of funeral expenses could not be paid from the exempt property. The purpose of the statute is " primarily, to provide for the comfort and support of the family when the owner of the property, which has been used for family support and comfort, dies." (LEHMAN, J., in *Matter of Burridge,* 261 N. Y. 225, 226.) The legislative note to the 1929 amendment, whereby exemptions were increased and altered to meet modern conditions, further indicates the purpose of the section wherein it was stated that the amendments were made " to provide more nearly for the needs of the beneficiaries during a reasonable period for adjustment after the death of the decedent." (Report of

the Commission to Investigate Defects in the Laws of Estates, N. Y. Legis. Doc. [1930] No. 62, p. 136.)

It has been the observation of the writer of this opinion, in his experience of many years, that the beneficient purpose of the statute has been repeatedly demonstrated, particularly when the decedent was survived by a wife and minor children. The prompt payment of the pecuniary exemption and the allocation of the exempt articles to the widow have tided over many families in the period of distress after the passing of its chief support. The law, however, makes no distinction between husband and wife in its general classification of the surviving spouse and any rule of law must be applied under the terms of the section with equal force to such surviving spouse. The existence of a debt to the decedent from either husband or wife cannot impair or defeat the right to the payment of the exemption. The pecuniary amount and the articles themselves are set aside as property untouchable by the creditors of the decedent or by the executor or by the administrator of the estate. Title vests immediately in the surviving spouse. (*Crawford* v. *Nassoy*, 173 N. Y. 163; *Matter of Schoenfelder*, 161 Misc. 654.) In *People ex rel. Brown* v. *Prendergast* (146 App. Div. 713) the comptroller of the city of New York attempted to resist the payment of funeral expenses of the decedent, a veteran soldier, under the Poor Law. His contention was that the pecuniary exemption of the widow was primarily subject to the payment of such expenses. The court overruled that contention and stated that the widow in her own right was vested with the small amount of exempt money left by the decedent and " it cannot be taken away from her for any purpose."

For similar reasons and because of the peculiar personal character of the exempt property, the surrogate holds that the judgment creditors of the husband are not entitled to enforce payment to them. If the property is not applicable to the debt due by the husband to the estate, it cannot logically be seized by his other creditors. The law creates a special privilege for the surviving spouse. It not only insulates the exempt property from the debts of the decedent, but also from the debts of the surviving husband or wife. Paraphrasing Chief Judge CARDOZO's statement in *Surace* v. *Danna* (248 N. Y. 18, 21), provision for the comfort and needs of the family, not payment of their " ancient debts, is the theme of the statute, and its animating motive." The beneficient purpose of the statute, aimed to provide temporary support during the period immediately after death, would be destroyed if the creditors of the spouse could seize the exempt property under execution or third-party order. No such legislative intent can be read into section 200, which

provides for the exemptions, or into section 201 of the Surrogate's Court Act, which authorizes a summary proceeding to compel the setoff of the exempt property. On the contrary, the legislative intent is clear that the exempt property is immune from any form of legal process or diversion from its real owner, the surviving spouse.

The executors, therefore, are directed to pay over the moneys in their hands, constituting the pecuniary exemption, and the proceeds of the sale of the exempt property, to the husband of the decedent. The request of the executors for permission to retain funds for payment of the proportionate share of any taxes assessed against such exempt property is denied. (*Matter of Kopper*, 135 Misc. 728.)

There remains for disposition the claim of the former husband of the decedent, Carroll L. Wainwright. Suggestions for a possible settlement or, in default thereof, for a further hearing upon the merits were made in my prior decision (N. Y. L. J. June 28, 1940, p. 2920) in this proceeding.

The attorneys are directed to report upon the suggestions of the surrogate on or before August 2, 1940. The submission of a decree construing the will and settling the account in accordance with the decisions of the surrogate must necessarily await such report by the attorneys.